Slip Op. 11-140

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CISCO SYSTEMS, INC., | : |
| Plaintiff, | : |
| v. | : Before:    WALLACH, Judge |
| | : Court No.:   04-00135 |
| UNITED STATES OF AMERICA, | : |
| Defendant. | : |

[Defendant's Partial Motion To Dismiss is DENIED.]

Dated:    November  18, 2011

Neville Peterson, LLP (Michael K. Tomenga and Meredith A. DeMent) for Plaintiff Cisco Systems, Inc.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, U.S. Department of Justice (Alexander J. Vanderweide) for Defendant United States.

**OPINION**

**Wallach, Judge:**

**I
INTRODUCTION**

Cisco Systems, Inc. ("Plaintiff" or "Cisco") seeks reclassification of "networking equipment and parts" entered into the United States between 2001 and 2002. Summons, Doc. No. 1. Defendant United States ("Defendant" or "the Government") contests the court's jurisdiction over the entries listed in certain challenged protests alleging that Cisco did not "specifically name and accurately identify the merchandise at issue" and that amendments to some of those protest were filed untimely. Defendant's Partial Motion to Dismiss, Doc. No. 48

1

("Defendant's Motion"); Memorandum in Support of Defendant's Partial Motion to Dismiss, Doc. No. 48 at 1 ("Defendant's Memo").

The Motion to Dismiss filed by the Defendant United States is DENIED. Taking as true all allegations in Plaintiff's Complaint that are "plausible on [their] face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Plaintiff filed valid protests, and the court therefore has jurisdiction pursuant to 28 U.S.C. § 1581(a).

## II
## BACKGROUND

Cisco seeks reclassification of merchandise entered into the United States between 2001 and 2002. Summons at 2-4; Complaint, Doc. No. 4 ¶ 14. Customs liquidated these entries under Subheadings 9013.80.90 and 9013.90.90 of the Harmonized Tariff Schedule of the United States ("HTSUS") between 2002 and 2003. Defendant's Memo at 2; Complaint ¶ 14. It is contested whether Cisco filed timely protests requesting reliquidation of the articles under various subheadings of HTSUS Chapter 85. See Complaint ¶ 15; Answer, Doc. No. 15 ¶ 15.

In its protests, Cisco challenged the classification of its merchandise as "networking equipment and parts thereof" and as "networking equipment and parts thereof, including amplifiers and transponders for optical fiber systems." See Defendant's Exhibit A, Cisco Systems, Inc., Detailed Reasons for Protest Against Appraised Value and Classification, Doc. No. 48-2 at 2; Defendant's Exhibit B, Cisco Systems, Inc., Detailed Reasons for Protest, Doc. No. 48-3 at 2. Customs reliquidated those entries it could determine contained amplifiers, transponders, and/or dispersion compensation modules ("DCMs").[1] Defendant's Memo at 2-3.

---

[1] Transponders, optical amplifiers, and DCMs were classified under HTSUS 8517.50.90. Defendant's Exhibit C, HQ 965367, Doc. No. 48-4; Defendant's Exhibit D, Revocation of Ruling Letter and Treatment Relating to Tariff Classification of Certain Optical Amplifiers and Dispersion Compensation Modules Used in Long-Haul Digital Telecommunications Systems, Doc. No. 48-5.

"Customs denied in whole or in part the 23 protests between October 2, 2003 and October 7, 2003 . . . because [it said] Cisco's description of its goods as 'networking equipment and parts thereof' was so overly broad that Custom's could not determine what merchandise other than amplifiers, transponders, and/or DCMs was being challenged." Id.  Before Customs ruled on Cisco's protests, Cisco filed amendments to a number of the protests, but Customs deemed these amendments untimely and did not consider them. Id. at 3-4.

In its Summons subsequently filed with the court in March 2004, Cisco listed specific HTSUS headings for each type of merchandise covered by the entries. Id. at 4; Summons at 2.[2] Cisco filed its Complaint in September 2005, and Defendant filed its Answer in April 2006. Complaint; Answer to Complaint, Doc. No. 11.

The Government has filed a Partial Motion to Dismiss in accordance with USCIT Rule 12(b)(1) and USCIT Rule (12)(b)(5). Defendant's Motion at 1.[3]

## III
## STANDARD OF REVIEW

When the court's jurisdiction is challenged, "[t]he party seeking to invoke . . . jurisdiction bears the burden of proving the requisite jurisdictional facts." Former Emps. of Sonoco Prods. Co. v. United States, 27 CIT 812, 814, 273 F. Supp. 2d 1336 (2003) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)).  However,

---

[2] The Summons indicates that Cisco claims amplifiers, transponders, dispersion [compensation] modules, multiplexers, and demultiplexers under HTSUS 8517.50.9000; photodiode modules under HTSUS 8541.40.6050; and filters, couplers, isolators, splitters, array wave guide modulators, electronic printed circuit board assemblies, and other fiber telecommunications equipment under either HTSUS 8517.90.5600 or 8517.90.6600. Summons at 2.

[3] Defendant's Partial Motion to Dismiss was held in abeyance while the parties completed jurisdictional discovery. Order, Doc. No. 63.  After discovery was complete, Cisco filed a supplemental response to the Motion to Dismiss, Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss in Part, Doc. No. 85, and the Government filed a response to Cisco's Supplemental Response, Defendant's Supplemental Reply to Plaintiff's Supplemental Response to Defendant's Partial Motion to Dismiss, Doc. No. 86.

in deciding a motion to dismiss, "the Court assumes that 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047 (1998) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570).

Therefore, in this case, Plaintiff must prove the requisite jurisdictional facts.  Here, where Defendant filed the motion to dismiss, the court must construe all reasonable inferences in favor of Plaintiff. See Sonoco Prods., 27 CIT at 814; Islip, 22 CIT at 854.

## IV
## DISCUSSION

Defendant argues that the "court lacks jurisdiction over the entries listed [in several protests] because the protests do not specifically name and accurately identify the merchandise at issue." Defendant's Memo at 1.  Furthermore, the Defendant argues that "this Court lacks jurisdiction over the claims and merchandise referenced in" amendments to several of those protests because they were not filed pursuant to statutory requirements. Defendant's Motion at 1-2.  In its response, Cisco claims that its protests and the amendments thereto are valid and convey subject-matter jurisdiction on this court. Plaintiff's Response to Defendant's Partial Motion to Dismiss, Doc. No. 58 at 1-2 ("Plaintiff's Response").  Cisco further requests that the court consider Defendant's Motion to dismiss under the standards applicable to a motion for summary judgment under USCIT R. 56. Id. at 2.

4

Whether this court has jurisdiction depends upon the validity of Plaintiff's protest under 28 U.S.C. §1581(a) and whether Plaintiff has filed a valid protest under the standard of review applicable to a motion to dismiss. See infra Part IV.A.  Given that standard, the protests at issue are valid because Cisco did adequately specify the merchandise at issue. See infra Part IV.B.  The court has jurisdiction over the amended protests. See infra Part IV.C.  Due to the posture of this case at this time, Plaintiff's motion to dismiss will not be converted to a motion for summary judgment. See infra Part IV.D.

## A
## Relevant Statutory Framework

Under 28 U.S.C. §1581(a) "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. §1581(a).  Whether the court has jurisdiction over the case under §1581(a) depends on whether the plaintiff filed a valid protest. Computime, Inc. v. United States, 772 F.2d 874, 878-79 (Fed. Cir. 1985).  19 U.S.C. §1514(c)(1) sets out the requirements for validity:

> A protest must set forth distinctly and specifically—
> (A) each decision described in subsection (a) as to which protest is made;
> (B) each category of merchandise affected by each decision set forth under paragraph (1);
> (C) the nature of each objection and the reasons therefor; and
> (D) any other matter required by the Secretary by regulation.

19 U.S.C. §1514(c)(1).  The pertinent regulation, 19 C.F.R. §174.13, further requires the protest to contain "[a] specific description of the merchandise affected by the decision as to which protest is made." 19 C.F.R. §174.13(a)(5).  Additionally, subject to limitations not applicable here:

> [A] protest may be amended . . . to set forth objections . . . which were not the subject of the original protest, in the form and manner prescribed for a protest, any time prior to the

>expiration of the time in which such protest could have been filed under this section. New grounds in support of objections raised by a valid protest or amendment thereto may be presented for consideration . . . at any time prior to the disposition of the protest in accordance with that section.

19 U.S.C. §1514(c)(1). For entries made prior to December 18, 2004, amendments may be made within the 90-day period after the date of notice of liquidation. 19 C.F.R. §174.12(e). Customs has discretion whether to consider any "alternative claims and additional grounds or arguments" submitted after the 90-day period has expired "with respect to any decision which is the subject of a valid protest at any time prior to disposition of the protest." 19 C.F.R. §§174.28, 174.14(a).

In a protest "[t]echnical precision is not required; but the objections must be so distinct and specific, as, when fairly construed . . . it was sufficient to notify the [duty] collector of its true nature and character." Davies v. Arthur, 96 U.S. 148, 151, 24 L. Ed. 758 (1877) (citations omitted). A protest has been deemed valid and therefore confers jurisdiction as long as it is "sufficiently distinct and specific to enable the Customs Service to know what is in the mind of the protestant." Computime, Inc., 772 F.2d at 879 (quoting United States v. Parksmith Corp., 62 C.C.P.A. 76, 82, 514 F.2d 1052 (1975)).[4] "Protest sufficiency does not turn on whether Customs can decide the entire claim based solely on information contained in the papers submitted . . . . the protest 'should have prompted Customs to seek the precise factual evidence necessary to evaluate [it].'" Estee Lauder, Inc. v. United States, Slip Op. 2011-23, 2011 Ct. Intl. Trade LEXIS 23 at *19-20 (CIT March 1, 2011) (quoting Saab Cars USA, Inc. v. United States, 276 F. Supp. 2d 1322, 1329 (CIT 2003), aff'd, 434 F.3d 1359 (Fed. Cir. 2006)); see also Am Nat'l Fire Ins.

---

[4] With regard to a Customs Officer's knowledge, Cisco argues that "[a]n import specialist with reasonable knowledge of [Customs' various publications] would comprehend the scope of merchandise Cisco intended its protests to cover." Plaintiff's Supplemental Brief at 20. The Defendant responds that despite knowledge, experience, and effort, the Customs Officer was unable to classify the entries at issue. Defendant's Supplemental Response at 7. In light of the motion herein to be decided, what a knowledgeable Customs Official should know is beyond the scope of this review.

6

Co. v. United States, 441 F. Supp. 2d 1275, 1282 (CIT 2006); Koike Aronson, Inc. v. United States, 21 CIT 1056, 1056-57, 976 F. Supp. 1035 (1997), aff'd, 165 F.3d 906 (Fed. Cir. 1999).

"[D]enial of jurisdiction for insufficiency of protest is a severe action which should be taken only sparingly." Eaton Mnfr. Co., v. United States, 60 C.C.P.A. 23, 30, 469 F.2d 1098 (1972). "The general rule [is] that customs protests are to be construed 'generously in favor of finding them valid.'" Saab, 434 F.3d at 1365 (quoting Koike Aronson, Inc., 165 F.3d at 908). The court has denied the validity of protests on grounds of "overbreadth and indefiniteness" Saab, 434 F.3d at 1366,[5] and being "too general," Castelazo & Assocs., Atwood Imports, Inc. v. United States, 64 Cust. Ct. 508, 514-15, 314 F. Supp. 38 (1970).[6]

**B**
**For The Purpose Of This Motion To Dismiss Cisco's Protests Adequately Specify The Merchandise At Issue**

The Government contends that the Court of International Trade lacks jurisdiction over this case because Cisco's "protests did not specifically name or identify the merchandise at issue in accordance with 19 U.S.C. §1514(c)(1) and 19 C.F. R. §174.13(a)." Defendant's Reply to Plaintiff's Response to Defendant's Partial Motion to Dismiss, Doc. No. 60 at 2-3 ("Defendant's Reply"); see also Defendant's Memo at 11. The Government argues that merchandise labeled "networking equipment and parts thereof," or "networking equipment and parts thereof, including amplifiers and transponders for optical fiber systems" is too vague and general. Defendant's Memo at 11. The Government maintains that "networking equipment and parts

---

[5] "[A] 'blanket protest' raising every conceivable ground for protest is overbroad and therefore invalid, because it fails to 'apprise[] the collector and the court of real claims as distinguished from possible claims.'" Saab, 434 F.3d at 1366 (quoting Lichtenstein v. United States, 1 Ct. Cust. 79, 82, Treas. Dec. 31105 (1910)). Similarly, in XL Specialty Ins. Co. v. United States, the court found the protest invalid because it did not include any reasons for the plaintiff's objections. XL Specialty Ins. Co. v. United States, 28 CIT 858, 568-69, 341 F. Supp. 2d 1251 (CIT 2004).

[6] "[O]ther merchandise" is too general a phrase and cannot be used to expand the scope of items covered by a protest that otherwise specifically identifies the merchandise at issue. Castelazo, 64 Cust. Ct. at 514-15.

thereof" could include any number of things, such as "phone systems, computer equipment, internet hardware, fiber optics." Id. at 12.[7]

Cisco argues that "'[n]etworking equipment' is a specific category of merchandise that is used to describe the telecommunications apparatus included in Cisco's protests by both the telecommunications industry and by Customs." Plaintiff's Response at 12.

To apply the requirements of 19 USC §1514(c)(1)(B) this court must determine whether "networking equipment" is in fact a recognized "category of merchandise." A category is defined as "any of several fundamental and distinct classes to which entities or concepts belong." Merriam-Webster Online, http://www.merriam-webster.com/dictionary/category (last visited Nov. 17, 2011). Although "networking equipment" is not a specific type of merchandise, it does adequately identify, albeit broadly, a category of merchandise specifically enough to fulfill the statutory requirements of §1514.

Plaintiff points out that Customs has previously acknowledged that in its own publication Cisco is a "importer and manufacturer of networking equipment." Plaintiff's Response at 19 (citing Plaintiff's Exhibit 30, U.S. Customs Service, Pre-Assessment Survey Report 821-01-FA1-17071, Cisco Systems, Inc. (Aug. 28, 2002), Doc. No. 85-5).[8] Additionally, Customs has, on numerous occasions, used the phrase in its own rulings and publications. For example, Customs has described the types of goods it considers to be "networked equipment" and laid out

---

[7] Plaintiff did list in the summons: "Amplifiers, Transponders, Dispersion Compensation Module, Multiplexers, Demultiplexers, Photodiode Modules, Filters, Couplers, Isolators, Splitters, Array Wave Guides, Modulators, Electronic Printed Circuit Board Assemblies, Other Fiber Telecommunications Equipment." Summons. However, only amplifiers, transponders, and Dispersion Compensation Modules ("DCM") were specifically named in Cisco's protests or protest memoranda. See Defendant's Exhibit B, Cisco Systems, Inc. Detailed Reasons for Protest, Doc. No. 48-3; Defendant's Exhibit F, Cisco Systems Inc., Detailed Reasons for Protest Against Classification, Doc. No. 48-7.

[8] Counsel for Government conceded at oral argument, for purposes of this motion to dismiss, "lets assume that this term networking equipment that there is a certain understanding within Customs of what it meant." November 3, 2011 Oral Argument at 11:02:28 – 11:02:35.

guidelines for their classification. General Notice: Modification/Revocation of Ruling Letters and Revocation of Tariff Treatment Relating to Tariff Classification of Certain Networked Equipment, 35 Cust. B. & Dec. 15 (July 23, 2001).  Numerous Customs' rulings consider the classification of goods described as "networking equipment" or "networked equipment."[9] Additionally, an index of Customs' decisions on specific items by category of merchandise includes the specific category "networking equipment." See Plaintiff's Exhibit 8, Excerpt from the Legal Precedent Retrieval System (Mar. 22, 1999), Doc. No. 85-1.[10]

The parties dispute the relevance and nature of this court's decision in Beck Distributing Corp. v. United States, 67 Cust. Ct. 358 (1971). See Plaintiff's Response at 14; Defendant's Reply at 3-4.  In that case, the question was whether merchandise was properly classified as automobile or engine parts, but in its decision, the court deemed a protest naming "engine parts" specific enough to confer jurisdiction because

> [i]n view of the previous litigation and the tariff provisions for parts of automobiles and for parts of internal-combustion engines, . . . classifying officers, who must have a degree of familiarity with internal-combustion engines and parts and with automobiles and parts, could not have been perplexed by the claim as to "engine parts" in the protest herein.

Beck, 67 Cust. Ct. at 361.

However, "previous litigation" and "tariff provisions" for claimed merchandise, id., are not the only authority available to determine if the protest was sufficiently specific.  Customs needs to examine the circumstances surrounding the protest to determine a protest's sufficiency.

---

[9] See, e.g., NY N017724 (Oct. 12, 2007); HQ 967631 (Dec. 14, 2005); HQ 963240 (July 23, 2001); HQ 963235 (July 23, 2001).

[10] Customs asserts that "[a]ny mention of 'networking equipment' or 'networked equipment' in . . . [Customs'] publications are used as mere shorthand general references to specific goods that are explicitly identified elsewhere in the rulings." Defendant's Reply at 8.  But, as Cisco points out, that "is precisely what a 'category' is intended to do—provide a shorthand reference to a grouping of specific items." Plaintiff's Supplemental Brief at 7.

See VWP of Am., Inc. v. United States, 30 CIT 1580, 1584-85 (2006) ("Thus, the inquiry for purposes of subject matter jurisdiction is whether the summons constituted fair notice to the government. That implicates the protest, and what indicia or implicit circumstances surround it as would clarify to the mind of Customs the intent of the importer and the matter of the protest."); Mattel, Inc. v. United States, 72 Cust. Ct. 257, 260-61, 377 F. Supp. 955 (1974) (emphasis omitted) ("that one great rule of construction is that at the time he makes his protest the importer must . . . sufficiently, in view of all the circumstances, call the collector's attention thereto"). In light of Customs' familiarity with Cisco's business, Customs' publications, rulings, and workshops;[11] for the purposes of this motion, the term "networking equipment and parts thereof" was sufficient to notify Customs of the nature of the claim.[12]

---

[11] Customs identified four seminars it held between 1998 and 2003 to train import specialists on electronics and information technology products. Plaintiff's Exhibit 25, Excerpts from Defendant's Response to Plaintiff's Fourth Set of Interrogatories and Requests for Production of Documents, Doc. No. 85-5 at Request for Production of Documents No. 7, No. 9. Materials produced from one of the seminars show repeated use of the phrase "networking equipment" and "networked equipment." Plaintiff's Exhibit 27, U.S. Customs and Border Protection, Electronics Seminar: San Francisco, CA, August 12-14, 2003, Doc. No. 85-5.

[12] Additionally, in the 1996 WTO Information Technology Agreement, to which the United States is a member, "network equipment" is defined as:

> Local Area Network (LAN) and Wide Area Network (WAN) apparatus, including those products dedicated for use solely or principally to permit the interconnection of automatic data processing machines and units thereof for a network that is used primarily for the sharing of resources such as central processor units, data storage devices and input or output units - including adapters, hubs, in-line repeaters, converters, concentrators, bridges and routers, and printed circuit assemblies for physical incorporation into automatic data processing machines and units thereof.

World Trade Organization, Ministerial Declaration on Trade in Information Technology Products, Dec. 13, 1996, 36 I.L.M. 375, Attachment B (1997). Although this court is not bound by WTO agreements, see Dongbu Steel Co. v. United States, 635 F.3d 1363, 1368 (Fed. Cir. 2011); Corus Staal BV v. United States, 502 F.3d 1370, 1375 (Fed. Cir. 2007), this definition is a useful explanation of the term at issue. Customs has admitted its use of the term is consistent with this definition. Plaintiff's Exhibit 1, Excerpts from Defendant's Responses to Plaintiff's Third Set of Interrogatories and Requests for Production of Documents, Doc. No. 85-1 at Interrogatory No. 5 ("The phrase 'networked equipment' is used in the General Notice of August 8, 2001 to encompass all Local Area Network ('LAN') and Wide Area Network ('WAN') apparatus, consistent with the manner in which the phrase 'network equipment' is used in the Information Technology Agreement (1996), to which the United States is a signatory. See references to LAN and WAN apparatus throughout the General Notice. See also Attachment B to the Information Technology Agreement defining 'network equipment.' Defendant further notes, however, that 'networked equipment' is not a tariff term used in the Harmonized Tariff Schedule of the United States ('HTSUS').")

## C
## For The Purpose Of This Motion to Dismiss The Court Has Jurisdiction Over The Amended Protests

Customs argues, "an amendment with additional claims or grounds requires an underlying valid protest." Defendant's Memo at 18. Customs asserts "'networking equipment and parts thereof' is not specific enough to constitute a valid protest claim in accordance with 19 U.S.C. §1514(c)(1) and 19 C.F.R. §174.13(a). As such the underlying original protests . . . are all invalid. Therefore, no additional claims . . . can properly be amended . . . past the 90 day post-liquidation expiration period." Id. at 18-19; see Defendant's Reply at 12. Moreover, Customs states that it "may not consider newly additional claims or merchandise beyond those contained in the original protests as . . . [Cisco's] amendments were filed beyond the 90 day post-liquidation period"[13] and "attempt[ed] to add claims and merchandise that were not specified in the original protests."[14] Defendant's Memo at 18.

Cisco counters that "[t]he amendments did not add any new claims," but rather "provided additional legal arguments in support of its classification claim" as permitted under 19 C.F.R. §174.28. Plaintiff's Response at 25. Plaintiff adds that "[w]ith respect to the identification of the category of merchandise subject to protest, the submission merely added exemplars of items of networking equipment, namely 'amplifiers and transponders for optical fiber systems . . . .'" Plaintiff's Supplemental Brief at 29.

Any amendments and "[n]ew grounds in support of objections" made to protests after the initial 90 day post-liquidation period must relate back to valid protests. 19 U.S.C. §1514(c)(1); Fujitsu Gen. Am., Inc. v. United States, 283 F.3d 1364, 1372 (Fed. Cir. 2002) (internal citations

---

[13] Defendant argues "[i]n fact, every attempted amendment was filed anywhere from 10 months to over a year after the entries contained in the unamended protests were liquidated." Defendant's Motion at 18.

[14] According to the Defendant, the original protests only claim "networking equipment and parts thereof" without any further description, whereas the amendments to the protests at issue "include claims for amplifiers, transponders, and DCMs." Defendant's Motion to Dismiss at 18.

omitted) ("in order to qualify as a new ground in support of a protest, a supplemental claim must challenge[] the same decisions as those challenged in the original protest.").

Cisco's amendments are not untimely, even if they were filed after the 90 day period, since they support what are taken to be valid protests.[15]  This action is distinguishable from that before the court in United States v. Weigert-Dagen, where the court refused an amendment after the initial post-liquidation period to add "slippers (for housewear)" to protests originally claiming "certain leather Huaraches." United States v. Weigert-Dagen, 39 C.C.P.A. 58, 62 (1951); see Defendant's Memo at 17.  In that case, the amendment attempted to add new merchandise that had its own entry line in the applicable trade agreement, separate and distinct from that claimed in the original protest. See Weigert-Dagen, 39 C.C.P.A. at 60.  Here, the amendment identified particular goods that fall under the category of merchandise specified in the original protest, not new merchandise.

**D**
**The Court Will Not Convert The Motion To Dismiss To A Motion For Summary Judgment**

Cisco argues that "[t]he Government's Partial Motion to Dismiss . . . is procedurally irregular and should be treated as a motion for summary judgment," pursuant to USCIT Rule 56, because it was filed after the Government filed an answer, contravening USCIT Rule 12(b), and since "it relies on facts and assertions not included in the pleadings," contravening

---

[15] See infra Part IV.B.

USCIT Rule 12(d).[16] Plaintiff's Response at 4, 6.

The Defendant argues that it "raise[d] no genuine issues of material fact in [its] partial motion to dismiss." Defendant's Reply at 8. The Government maintains that all reference to other materials were to "inform the Court of the procedural history giving rise to the denial of the protests. . . . Cisco's failure is a failure to meet a legal threshold of protest specificity. No evidence external to the pleadings is required to demonstrate such failure." Id. at 10. Finally, the Government asserts that their motion should be considered a USCIT Rule 12(c) motion, because it was filed after an answer was interposed. Id. at 11-12 (citing Makita Corp. v. United States, 17 CIT 240, 243-44, 819 F. Supp. 1099 (1993).

Because Defendant's Motion to Dismiss was filed after the pleadings had closed,[17] the court treats Defendant's motion in accordance with USCIT Rule 12(c) as a Motion for Judgement on the Pleadings. See id.; USCIT Rules 12(b) and 12(c); see also Makita, 17 CIT at 243-44 (1993). If a party attaches matters outside of the pleadings in a USCIT Rule 12(c) motion that are not excluded by the court, USCIT Rule 12(d) mandates conversion of the motion to a motion for summary judgment. USCIT Rule 12(d). However, "a court retains discretion to exclude matters outside the pleadings and, if such matters are excluded, conversion to summary judgment is not required." FAG Holding Corp. v. United States, 744 F. Supp. 2d 1353, 1357 n.5

---

[16] The pertinent part of USCIT Rule 12 says:
    (b) . . . A motion asserting . . . [lack of jurisdiction] must be made before pleading if a responsive pleading is allowed . . . .
    (c) Motion for Judgment on the Pleadings. After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings.
    (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(5) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.
USCIT Rule 12.

[17] The USCIT Rule 12(b) provision to file a motion asserting lack of jurisdiction must be made before the pleading if a pleading is allowed; since Defendant's Answer was filed in April 2006 and Defendant's Motion to Dismiss was filed in October 2008, USCIT Rule 12(b) is inapplicable to the Government's motion.

(CIT 2010). "A court has wide discretion in electing to consider matters outside of the pleadings." Skyberg v. United Food & Commercial Workers Int'l Union, 5 F.3d 297, 302 n.2 (8th Cir. 1993);[18] see Larsen v. American Airlines, Inc., 313 F.2d 599, 601 (1963); Citizens Nat. Trust & Sav. Bank v. Munson Equip., 24 F.R.D. 193, 195-96 (S.D. Cal. 1959). In this case the court has decided to exclude all matters presented outside the pleadings. Accordingly, the mandate imposed by USCIT Rule 12(d) does not apply, and in the interest of securing a "just, speedy, and inexpensive determination of every action and proceeding," USCIT Rule 1, the court will not convert Defendant's Motion to Dismiss to a Motion for Summary Judgment.

## V
## CONCLUSION

For the above stated reasons, Defendant's Motion to Dismiss is DENIED.

                                                                         /s/ Evan J. Wallach  
                                                                      Evan J. Wallach, Judge

Dated: November 18, 2011  
        New York, New York

---

[18] Additionally, when all parties have actual notice of all documents the movant relied upon in its motion, the necessity of converting to a motion for summary judgment is diminished, Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991), since all parties have had the "reasonable opportunity to present all the material that is pertinent to the motion," USCIT Rule 12(d). In the case at hand the Defendant's Partial Motion to Dismiss was held in abeyance while the parties conducted jurisdictional discovery. Order, Doc. No. 63. Plaintiff subsequently submitted numerous exhibits including correspondences, answers to interrogatories, and depositions nearly two years after the Motion to Dismiss was filed. Plaintiff's Supplemental Brief, Exhibits 1-43. Additionally, the "court engaged in a colloquy with the parties during oral argument on the motion to dismiss regarding whether the proceding should be treated as a summary judgment proceeding." Easter v. United States, 575 F.3d 1332, 1336 (Fed. Cir. 2009); November 3, 2011 Oral Argument at 11:11:57-11:12:36; 11:13:00-11:14:19. Both parties conceded at oral argument that there are still material facts at issue. November 3, 2011 Oral Argument at 11:14:55-11:15:50; 11:17:27-11:17:32. Therefore, Cisco did have "reasonable opportunity to present . . . material that is pertinent to the motion." USCIT Rule 12(d); see also Easter, 575 F.3d at 1336 ("whether a party has had a 'reasonable opportunity' to present pertinent summary judgment materials when a trial court converts a motion to dismiss" depends on whether the party has had notice and time to respond).